Mary L. FARMER, Administratrix of the Estate of John F. Farmer, Deceased, Libellant,

v.

The O/S FLUFFY D et al., Respondents.
No. 388.

United States District Court
S. D. Texas,
Brownsville Division.
Aug. 26, 1963.

John F. Farmer, Deceased, in her capacity as such for herself and on behalf of her surviving children by her deceased husband, and also on behalf of the surviving father and mother of the deceased John F. Farmer.

She is suing the O/S JUNE and its owner, J. R. Hardee Shrimp Company, the O/S ARLENE and its owner, R. LeLoup Shrimp Company, Inc. and also the O/S FLUFFY D and its owner, Chris W. Dobard, in rem and in personam under the provisions of 46 U.S.Code § 688 et seq., also known as the "Jones Act", and 46 U.S.Code § 761 et seq., also known as the "Death on the High Seas Act", and the General Admiralty Laws of the United States.

John F. Farmer, who was captain of the shrimping vessel O/S FLUFFY D, was killed on May 31, 1962, when he was stabbed in the back with a butcher knife while aboard the O/S JUNE in the Gulf of Mexico at a place about ten miles off the Coast of Mexico. Farmer was stabbed to death by Captain Calvin J. Hebert who was captain of the shrimp vessel O/S ARLENE. All of the boats involved were shrimping vessels carrying three-man crews.

It seems that shrimping vessels operating out of the Port of Brownsville, as well as other ports, when the catches are good, prefer to remain away from port for approximately thirty days at a time. If the shrimp is kept on board the vessel for more than fourteen days, there is a tendency for it to spoil; and, therefore, it is common practice for vessels coming into port to bring the shrimp catches of boats that are not ready to come into port. For this purpose, the shrimping industry had Congress enact into law Section 404a of Title 46 U.S.Code, providing that a vessel licensed to engage in the fishery business shall not be considered as engaging in transportation of freight for hire solely because such vessel occasionally takes on board on the high seas and transports without monetary consideration to a port of the United.

Sharpe & Hardy, Ben S. Hardy, Brownsville, Tex., for libellant.

Cox & Wilson, Tom Clendenin, Jr., Brownsville, Tex., for respondents.

GARZA, District Judge.

This is a suit brought by Mary L. Farmer, Administratrix of the Estate of

States the catch of another fishing vessel of the United States.

The transporting vessel is paid fifty cents a box for transporting the shrimp, and the cost of transporting the shrimp is deducted as an expense of the catch. This amount goes to the members of the crew to supposedly pay them for their labor in transferring the shrimp and unloading it at the port of call. The owner of the transporting vessel does not participate in this payment, but the owner of the vessel which sends its catch to port through another vessel pays its share of the cost, sinces catches are generally divided sixty per cent to the owner of the vessel and forty per cent to the members of the crew.

The captains of the vessels have the sole authority to decide when and with whom they will send their catches into port, and the captain of the transporting vessel decides to what port it will take the catch being transported.

On May 31, 1962, the O/S JUNE, with Dennis Touchet as its captain, was returning to the Port of Brownsville and was loading shrimp from other vessels to transport to his port of call. The O/S JUNE anchored at the North Reef near Tuxpan, Mexico, at about 9:00 in the morning of that day, and proceeded to take the shrimp of the O/S JUPITER C, and of the O/S VALLEY GOLD. The O/S ARLENE arrived at about the same time, and unloaded after the JUPITER C. The O/S FLUFFY D, with Captain John F. Farmer, arrived alongside the O/S JUNE about 12:00 noon. After the ARLENE unloaded its shrimp, it did not leave, as it had some ice that the O/S JUNE could use if it needed it.

At the time of the fatal stabbing of Captain Farmer, the O/S FLUFFY D was tied to one side of the O/S JUNE, and the O/S ARLENE was tied to the other.

During the morning of May 31st, while the unloading operations of the O/S JUPITER C and the O/S VALLEY GOLD were taking place, the captain of the O/S JUNE, Dennis Touchet, had been drinking with the captain of the VALLEY GOLD, Captain Hebert, and some members of his own crew, in the galley of his boat. Apparently two bottles of liquor were consumed during the morning, and also some beer had been consumed by some of them.

When Captain Farmer arrived, and before his shrimp was unloaded, he was also invited for a drink on board the O/S JUNE, but before getting down to the serious business of drinking, Captain Touchet sent one of his crew members, Felix Tamayo, to get more liquor from the O/S JIM BOWIE, and Captain Farmer accompanied Tamayo on ,this mission. After they returned with a bottle of rum and a bottle of gin, the shrimp from the O/S FLUFFY D was transferred to the O/S JUNE.

Captain Touchet, Captain Hebert and Captain Farmer were sitting at the table in the galley of the O/S JUNE, drinking, and Felix Tamayo, a member of the crew of the O/S JUNE, was standing there with them. They were talking and laughing and horse-playing.

Captain Touchet said something to Captain Farmer, and Captain Farmer proceeded to call Touchet a "coon ass". While playing around, Captain Farmer apparently hit Captain Touchet on the shoulder with his hand, and Captain Touchet, who weighed some 200 pounds to Farmer's 150, proceeded to grab Captain Farmer, bring him to him, and hit him on the face, causing Farmer's mouth and nose to bleed.

Upon seeing himself bleeding, Captain Farmer made the statement to Touchet in the form of a question, "So you want to see blood spill?" Farmer then proceeded to take out a pocket knife from his pocket and open it up.

All during the horse-playing, Captain Hebert, of the O/S ARLENE, had apparently been sitting quietly by without participating in the horse-play. Upon Captain Farmer taking his pocket knife out, Felix Tamayo ran out of the galley, as

did Captain Touchet of the O/S JUNE. Tamayo went to the stern of the O/S JUNE, and Captain Touchet abandoned his vessel and jumped onto the deck of the FLUFFY D. Captain Farmer also went out of the galley and was chasing Tamayo, ordering him to jump overboard. Tamayo managed to get hold of Captain Farmer and had him pinned to the hatch, when Captain Hebert pulled Tamayo off of Farmer. In the melee that ensued, Farmer cut Tamayo and also Captain Hebert.

In the meantime, Farmer had also armed himself with a chain, and was swinging it wildly around. Captain Farmer, apparently looking for Captain Touchet who had abandoned his boat, went back through the galley to the other side of the O/S JUNE, with Captain Hebert, who was already cut, close behind. On going through the galley of the O/S JUNE, Captain Hebert armed himself with a butcher knife with a blade of about twelve to fourteen inches long, and went out on the side of the O/S JUNE where the O/S FLUFFY D was tied.

Captain Farmer was apparently very mad and was moving from side to side, apparently looking for Touchet, and when he saw Hebert he made some motion towards him, and Hebert plunged the butcher knife in his back, down to the hilt. Captain Farmer slumped and died immediately.

Farmer's body was sent to Brownsville, and was later buried in Georgia. Captain Hebert and Felix Tamayo were taken into a Mexico port for treatment, and after some time, Captain Hebert returned to Brownsville where he was arrested and charged in this Court with murder. The jury in his criminal case acquitted him, apparently believing his story that he had acted in self-defense.

The Libellant here claims that the O/S JUNE was an unseaworthy vessel because of the actions of its master in allowing the drinking on board his vessel, and in abandoning the same after he had precipitated the fight that ensued, by drawing blood from Captain Farmer's mouth and nose. The Libellant also maintains that these actions of Captain Touchet of the O/S JUNE, constituted negligence and a proximate cause of the death of Captain Farmer

■ Libellant maintains that because of the transferring of the shrimp from one boat to the other, the three boats in question were all engaged in a joint venture, and that there existed an agency relationship between them, and that all three vessels are responsible for the death of Captain Farmer. With this contention, this Court cannot agree.

▪ ■ The death of Captain Farmer resulted because of the negligence of Captain Dennis Touchet of the O/S JUNE,. when he allowed the apparently heavy drinking on board his vessel, contrary to the orders of his owner, when he should have realized that the fight that ensued could occur because of such heavy drinking on board his vessel, and especially when his actions in striking Captain Farmer, who was lawfully on board his vessel, precipitated the fight that ended in Farmer's death.

Captain Touchet was also negligent in not maintaining order on board his vessel,. and in abandoning the same when he owed a duty to those on board, including Captain John Farmer, to maintain order on board his vessel.

■ ■ A master is responsible for all actions on board his vessel until he is replaced by the owner or until he reaches port and resigns his position. The master is the representative of the owner, and his actions are those of the owner.

The negligence of Touchet was a proximate cause of the death of Captain John Farmer. The negligence of Captain Touchet in abandoning his vessel proximately caused the O/S JUNE to become an unseaworthy vessel. Poignant v. United States, 2d Cir., 225 F.2d 595; Grillea v. United States, 2d Cir., 232 F. 2d 919. A vessel on the high seas without a master on board is an unseaworthy

vessel, especially under the conditions that existed just prior to and at the time of the stabbing and resulting death of Captain John F. Farmer.

■ A seaman of one vessel authorized or required to go aboard another vessel on business may sue the other vessel and its owner for an unseaworthy ship. The Carol Ann, 163 F.Supp. 366 (S.Dist. of Tex., Brownsville Div., 1956).

■ Under Maritime Law, the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests, the duty of exercising reasonable care under the circumstances of each case. Kermarec v. Compagnie Generale Transatlantique (1959), 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550. Captain Farmer was not only on board the O/S JUNE because of the necessity of seeing that his catch from the O/S FLUFFY D was properly put on board the O/S JUNE for transportation to port, but was also invited by Captain Touchet to participate in the drinking session. Under the circumstances of this case, Captain Touchet did not exercise reasonable care, and his actions not only constituted negligence, but said negligence caused his ship to become unseaworthy.

Captain John F. Farmer himself was negligent in also participating in the drinking contrary to the orders of his owner, and in joining in an affray. I find that he contributed fifty per cent to his own demise.

The O/S ARLENE and the O/S FLUFFY D and their owners can in no way be held at fault for the drunken brawl, fight and the death that ensued, and they are absolved from any fault in the death of Captain John F. Farmer. Certainly Captain Hebert was not acting in furtherance of the business of the owner of the O/S ARLENE when he stabbed Captain John F. Farmer. The business being conducted by Captain Farmer on board the O/S JUNE—that is, transferring its shrimp for transportation to port—had already ended, and under no stretch of the imagination can we find the O/S FLUFFY D responsible in any way for John F. Farmer's death.

■ Captain Farmer, however, was on board the O/S JUNE while attending to his owner's business, and since funeral expenses are in the same category as maintenance and cure, I find that the O/S FLUFFY D is subject to a lien for the funeral expenses in the amount of $1,160.33, which it must pay to the Libellant herein. Although Captain Farmer was contributorily negligent in his own demise, the fact still remains that his death was not caused solely by his negligence.

■ Captain John F. Farmer, at the time of his death, was a man 47 years of age and had a life expectancy of some 26 years, and a working expectancy of some 15 to 16 years as a shrimp boat captain. He was survived by his widow, Mary L. Farmer, who was 45 years of age at the time of his death, and by two children, Susan Elaine Farmer, a daughter 16 years of age at the time of his death, and a son, William Franklin Farmer, aged nine years. Captain Farmer was also survived by his father, John F. Farmer, and his mother, Annie Elizabeth Farmer, who were not dependent upon him for support and who are not entitled to recover any damages for his death.

Taking into consideration the fact that Captain Farmer was fifty per cent responsible for his demise, I find the damages to be paid by the O/S JUNE and J. R. Hardee Shrimp Company, her owner, to be $17,000.00, to be apportioned as follows:

Mary L. Farmer, . . . . . . . . . .$  9,000.00
Susan Elaine Farmer, . . . . . .    2,500.00
William Franklin Farmer,. .    5,500.00
                                              $  17,000.00

This will constitute my Findings of Fact and Conclusions of Law.

The Clerk will send copies of this Memorandum Opinion to proctors, and proctor for Libellant will prepare an appropriate judgment for entry.