Donald **BARBACHYM** and Lucy **Barbachym, Plaintiffs-Appellants,**

v.

**COSTA LINE, INC., et al., Defendants-Appellees.**

**No. 82–1137.**

United States Court of Appeals, Sixth Circuit.

Argued April 22, 1983.

Decided Aug. 8, 1983.

James E. Gould (argued), Grand Rapids, Mich., for plaintiffs-appellants.

Paul D. Galea (argued), Foster, Meadows & Ballard, Detroit, Mich., for defendants-appellees.

Before EDWARDS, Chief Judge, CONTIE, Circuit Judge, and WEICK, Senior Circuit Judge.

CONTIE, Circuit Judge.

Plaintiffs Donald and Lucy Barbachym appeal from summary judgment granted in favor of defendants Costa Lines, Inc., 66th Street Travel Service, Inc., Costa Armatori S.P.A. and Costa Tours, Inc., in an action resulting from food poisoning Donald Barbachym allegedly contracted after consuming food aboard a Costa Line cruiser. The district court granted summary judgment for defendants based upon the plaintiffs' failure to file suit within the one year period of limitations specified in the contract of carriage and permitted by 46 U.S.C. § 183b(a). On appeal, the plaintiffs contend that they are not bound by the contractual limitation period because the carri-

er did not reasonably warn them of the existence and importance of the contract terms as required by *The Majestic,* 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897) and *Silvestri v. Italia Societa Per Azioni Di Navigazione,* 388 F.2d 11 (2d Cir.1968). In this case of first impression for this court, we hold the reasonable notice test of *The Majestic* and *Silvestri* to be the proper legal standard and agree with the plaintiffs that they did not receive reasonable notice. The judgment of the district court is reversed and the case remanded for trial.

I.

In February 1978 Donald and Lucy Barbachym attended a medical seminar arranged by the 66th Street Travel Service of Tampa and Miami, Florida. The seminar included a cruise with Costa Lines, Inc. and Costa Tours.

The initial segment of the seminar was held February 2–4, 1978, in Clearwater, Florida. Pursuant to the arrangements made by 66th Street Travel Services, the Barbachyms then flew to San Juan, Puerto Rico, where the cruise ship was to be boarded. Prior to boarding the M/V Angeline Lauro, plaintiffs were given an 8¼ inch by 4½ inch travel folder. Inside this folder was a 3½ inch by 7 inch document entitled "Group Boarding Pass." Information contained on the pass included the group name, passenger names, name of the ship, sailing date and cabin number. In the same size print was the following: "Conditions of Transportation as per Ticket No.—Held by Group Leader." The names and logos of Costa Lines, Inc. and Chandris America Lines, S.A. were also on the pass. Nothing on this document referred to the other material included in the folder.

Folded and stapled to the travel folder was an 8½ inch by 11 inch document entitled "Terms and Conditions of contract of passage and baggage." Printed on this document, in very small type, are 35 articles which purport to delineate the respective legal rights and obligations of the carrier and passengers. The list concludes with a clause which reads: "THE HOLDER OF

THIS PASSAGE TICKET DO [sic] HEREBY DECLARE ... THAT HE IS AWARE AND ADHERES TO ALL THE CONDITIONS AND CLAUSES SET FORTH IN THIS PASSAGE CONTRACT AND THAT HE SPECIFICALLY APPROVES ... [certain clauses including no. 30.]" Clause No. 30 requires notice of claims to the company within six months and initiation of litigation within one year after an injury or death has occurred as a prerequisite to recovery.[1] A space is designated for the passenger's signature. Dr. Barbachym did not sign the documents. He testified during a deposition that he was never informed of the importance of the document and was never requested to read and/or sign it.

During the voyage, Dr. Barbachym contracted shigellosis which he alleges was the direct result of consuming food while aboard the Angelina on or about February 8, 1978. He further alleges that as a proximate result of this food poisoning, he required two surgeries, was near death, and was unable to work for an extended period of time. The Barbachyms filed suit for damages in the U.S. District Court for the Western District of Michigan on August 17, 1979, asserting theories of strict liability, breach of implied warranty, and negligence.

The defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure based upon the plaintiffs' failure to bring the action within one year as specified by Article 30 of the "Terms and Conditions." The plaintiffs argued that since they were not given reasonable notice of the contract provisions, as required by the Supreme Court's holding in *The Majestic*, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897), the limitations were not incorporated into the contract of carriage and are therefore not binding upon them.

The district court, relying primarily on the reasonable notice requirement of *Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11 (2d Cir.1968), initially determined that neither the statement on the boarding pass nor the physical arrangement of the terms and conditions provided reasonable notice to the passengers of the terms and conditions. Thus, the court held that those terms were not incorporated into the contract and the defendants' motion was denied. Immediately prior to trial, however, the court reversed its earlier ruling and granted the defendants' motion for summary judgment. Relying on *DeNicola v. Cunard Line Ltd.,* 642 F.2d 5 (1st Cir. 1981), the district court concluded that, as a matter of law, the form in which the material was presented to the plaintiff complied with the carrier's duty of reasonable communication. Therefore, the court held that the plaintiffs' action was barred for failure to meet the one-year period of limitations contained in the contract of carriage.

On appeal, the plaintiffs claim that the district court erred in holding that the defendants did all they could reasonably do to warn passengers that the terms and conditions were important legal matters affecting their legal rights. We agree.

## II.

The "reasonableness" of notice to the passengers of critical terms of carriage contracts is a question of law; hence the trial judge was correct to rule on the issue without submitting it to a jury. *See DeNicola v. Cunard Line Ltd.,* 642 F.2d at 11; *Carpenter v. Klosters Rederi,* 604 F.2d 11, 13 (5th Cir.1979); *Cada v. Costa Line, Inc.,* 547 F.Supp. 85, 87 (N.D.Ill.1982).

Title 46 U.S.C. § 183b(a) allows owners, operators and agents of sea-going vessels to limit their liability for personal injury and death to cases in which notice has been given to the carrier within six months of the incident and where the suit has been

---

1. Article 30 of the "Terms and Conditions of Contract of Passage and Baggage" provides:
   Limitation of Actions against the Company: No action or proceeding against the company for death or injury of any kind to the passenger shall be instituted, unless notice is given to the company or its duly authorized agent within six months from the day when the death or injury occurred, and the action or suit arising therefrom is commenced within one year from the date when the death or injury occurred.

commenced within one year.[2] Since this statute clearly works to the carriers' benefit while restricting the time available for passengers to seek legal recourse, courts have been hesitant to honor the shortened period of limitations permitted by Section 183b(a) unless the carrier has made a "reasonable" effort to warn passengers of the notice and filing requirements. *See Silvestri, supra; The Kungsholm,* 86 F.2d 703 (2d Cir.1936); *Cada, supra; Raskin v. Compania de Vapores Realma S.P.,* 521 F.Supp. 337 (S.D.N.Y.1981). Even prior to the enactment of 46 U.S.C. § 183b(a), the Supreme Court held that a carrier must make a reasonable effort to advise passengers of the terms of the carriage contract. The court stated:

> We quite agree with Lord O'Hagan in *Henderson v. Stevenson,* that "when a company desires to impose special and most stringent terms upon its customers, in exoneration of its own liability, there is nothing unreasonable in requiring that those terms shall be distinctly declared and deliberately accepted."

*The Majestic,* 166 U.S. 375, 386, 17 S.Ct. 597, 602, 41 L.Ed. 1039 (1897).

Although *The Majestic* was decided over eighty years ago, a clear standard for determining whether a particular carrier's notice to passengers regarding limitations of liability is "reasonable" has not yet evolved. Following a lengthy analysis of the development of case law in this area which need not be repeated here, the *Silvestri* court concluded that " . . . the thread that runs implicitly through the cases sustaining incorporation is that the steamship line had done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights." 388 F.2d at 17. "Subsequent decisions . . . [suggest] that the *Silvestri* approach should govern the analysis in most if not all steamship ticket cases."

*DeNicola,* 642 F.2d at 9. *See also Cada,* 547 F.Supp. at 86–87; *Raskin,* 521 F.Supp. at 340; ("[a] fair reading of *Silvestri* requires a carrier to apprise the passenger of both the existence and importance of contractual periods of limitation in order to find the restrictions enforceable.") *McQuillan v. "Italia" Societa Per Azione Di Navigazione,* 386 F.Supp. 462 (S.D.N.Y.1974), aff'd, 516 F.2d 896 (2d Cir.1975).

■ This is a case of first impression for this court. We now adopt the "reasonable notice" standard of *Silvestri.* We also agree with the *Silvestri* court that the burden of proof is on the carrier to show that it did all that it reasonably could to warn the passengers of its limited liability. 388 F.2d at 17.

Generally, courts have held that a carrier has not made a "reasonable" effort to warn passengers of its liability limitations unless the face of the ticket contains conspicuous language directing the passenger's attention to the contractual terms contained in other material furnished by the carrier. *See, e.g., The Majestic,* 166 U.S. at 379, 17 S.Ct. at 599 ("[t]here was no proof whatever that [the plaintiffs] . . . ever had their attention called to the notices on the back of the paper . . ."); *Silvestri,* 388 F.2d at 17–18 (imposing a duty on the ticket draftsman to produce a significantly eye-catching warning); *The Kungsholm,* 86 F.2d at 704 (perceiving general rule as requiring notice on face of ticket that terms are incorporated by reference); *Bellocchio v. Italia Flotte Riunite Cosulich Line Lloyd Sabaudo Navigazione Generale,* 84 F.2d 975, 976 (2d Cir. 1936) (nothing on face of ticket called attention to limiting terms on the back; therefore, terms not part of the contract of carriage). *See also Maibrunn v. Hamburg-American S.S. Co.,* 77 F.2d 304, 305 (2d

**2.** 46 U.S.C. § 183b(a) reads:

It shall be unlawful for the manager, agent, master, or owner of any sea-going vessel (other than tugs, barges, fishing vessels and their tenders) transporting passengers or merchandise or property from or between ports of the United States and foreign ports to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred.

Cir.1935); *Baer v. North German Lloyd*, 69 F.2d 88, 89 (2d Cir.1934); *Cada*, 547 F.Supp. at 87; *Raskin*, 521 F.Supp. at 341. In contrast, cases in which the carrier's liability limitations have been honored generally involve tickets with conspicuous warnings directing the passenger's attention to the contractual terms contained elsewhere. *See, e.g., DeNicola*, 642 F.2d at 10 (language directing passengers to terms and conditions of contract printed in bold type on ticket face); *Foster v. Cunard White Star*, 121 F.2d 12, 13 (2d Cir.1941) (plaintiff bound by a direct reference on the face of the ticket to the terms and conditions of the contract); *Baron v. Compagnie Generale Transatlantique*, 108 F.2d 21, 22 (2d Cir. 1939) (prominent red type on ticket called passengers attention to limitation of liability contained in contract of carrier); *Gardner v. Greek Line*, 388 F.Supp. 856, 857 (M.D.Pa.1975) (bold, underlined type on ticket face read "please read before accepting" in reference to contract terms contained in packet); *McQuillan*, 386 F.Supp. at 466 (message on ticket face found by court to "reasonably communicate" the importance of terms and conditions of contract to passengers).

In the instant case, the ticket face contained no conspicuous language. The only language even hinting that there may be additional terms elsewhere reads: "Conditions of Transportation as per Ticket No. ——." The line immediately below states "Held by Group Leader." Thus, even if a passenger were to deduce from this vague language that there might be some additional terms governing the trip, the passenger naturally would assume that only the "Group Leader" had access to the material containing those terms. Nothing on the face of the ticket indicates either the critical nature of the additional terms of contract or the fact that the "Terms and Conditions of contract of passage and baggage" are contained in the travel folder.

Other factors weigh heavily against the "reasonableness" of the carrier's efforts to warn the passengers in this case. The paper containing the contract was folded and stapled to the folder. The print was extremely small. No effort was made to explain the terms to Dr. Barbachym or to obtain his signature on the contract, even though a space was provided for his signature. Finally, the article on the limitation of liability, which ultimately controls all the other rights of the passengers, is the thirtieth of thirty-five articles which allegedly form the carriage contract. We believe that an article of such import should be more prominently displayed.

Comparing and contrasting the various ticket forms and results of previous steamship ticket cases shows that each case must be reviewed carefully to determine whether the particular type of notice was reasonable in that particular situation. In the instant case, we find that the notice was not only insufficient, but virtually nonexistent. It clearly does not meet the *Silvestri* reasonableness standard. Therefore, we REVERSE and REMAND for further proceedings consistent with this opinion.