Regina M. MURATORE,
Plaintiff, Appellee,

v.

M/S SCOTIA PRINCE, ETC., et al.,
Defendants, Appellees.

Prince of Fundy Cruises, Ltd.,
Defendant, Appellant.

No. 87–1641.

United States Court of Appeals,
First Circuit.

Heard Dec. 9, 1987.

Decided April 19, 1988.

As Amended April 20, 1988.

Leonard W. Langer with whom Paul G. Vielmetti and Thompson, McNaboe, Ashley & Bull, Portland, Me., were on brief for defendant, appellant.

Michael X. Savasuk, Portland, Me., for plaintiff, appellee Regina M. Muratore.

Before BREYER and SELYA, Circuit Judges, and LAFFITTE,[*] District Judge.

LAFFITTE, District Judge.

Plaintiff-appellee commenced this action to recover damages for physical injuries and mental pain and suffering sustained while on board the M/S Scotia Prince. After a bench trial in admiralty, the United States District Court for the District of Maine granted judgment for plaintiff on her claim for intentional infliction of emotional distress and awarded five thousand dollars in compensatory damages and twenty-five thousand dollars in punitive damages. *Muratore v. M/S Scotia Prince*, 656 F.Supp. 471 (D.Me.1987). On appeal, defendant-appellant Prince of Fundy Cruises, Ltd. ("Prince") seeks review of the district court's findings that: 1) plaintiff was not bound by the one year contractual limitation provision specified in the master ticket; 2) defendant was liable for the actions of the photographers; 3) plaintiff is entitled to recover for intentional infliction of emotional distress; and 4) plaintiff is also entitled to an award of punitive damages. We affirm the district court's thorough and comprehensive opinion but reverse that part of the judgment awarding appellee punitive damages.

I.  FACTS

Prince was the bareboat charterer of the M/S Scotia Prince, a cruise ship owned by Transworld Steamship Company, Inc. ("Transworld"). In September of 1984, Prince had contracted with Floating Fleet, Ltd. (Floating Fleet) to operate all of the

---

[*] Of the District of Puerto Rico, sitting by designation.

hotel services on board the cruise ship. Floating Fleet then contracted with Intermed Photos, Ltd. (Intermed) to operate a photographic concession on board the cruise ship. Floating Fleet provided Intermed complimentary berths, darkroom and other space. In return, Intermed would give Floating Fleet a share of the profits from the photographic concession.

Plaintiff, a resident of Massachusetts, and her traveling companion, Marlene LeMoine, planned a round trip voyage on the M/S Scotia Prince between Portland, Maine and Yarmouth, Nova Scotia through Peter Pan Tours during the Labor Day weekend of 1984. Peter Pan Tours provided them with bus transportation between Springfield, Massachusetts and Portland, Maine.

While plaintiff was still on the bus in Portland, William F. Donovan, the Peter Pan Tours guide, left the bus to receive the group's travel documentation. Prince issued to the Peter Pan Tour group a master ticket numbered "T73643" and its accompanying ticket jacket. The letter "T" designated a tour group ticket as opposed to a ticket issued to an individual passenger. Donovan signed the work sheet on the line marked "tour escort signature." Prince also issued to Donovan boarding passes, meal vouchers and gambling chits. The handling of this group excursion was performed in accordance with Prince's usual ticketing procedure.[1] Donovan returned to the bus and distributed boarding passes, meal vouchers and gambling chits issued by Prince to each passenger in the tour group, including plaintiff and her traveling companion.

Master ticket T73643 contained certain terms and conditions of passage including warnings of the existence of such terms and conditions. The word "important" was printed in bold type. The terms and conditions themselves were set forth in twelve paragraphs beginning on the inside of the front cover, indicating in unambiguous language that the conditions were continued inside the back cover. Paragraph nine states:

TIME LIMITATION—SUITS.

Suits and actions to recover for loss of life or personal injury to passengers shall not be maintainable unless instituted within one (1) year from the date when death or injury occurred. Suits and actions to recover for claims other than personal injuries or loss of life shall not be maintainable unless commenced within six (6) months from the date on which the claim accrued or loss occurred.

Plaintiff never physically possessed master ticket T73643 and its accompanying ticket jacket containing the terms and conditions of passage. The three documents (boarding passes, meal vouchers and gambling chits) that plaintiff possessed did not contain or refer to any of the terms and conditions.

On boarding the cruise ship, photographers Mark Ayling and Martyn Moore were taking the passengers' pictures. Plaintiff informed the photographers that she did not want her photograph taken. When they proceeded to disregard her request, plaintiff turned her back to them and walked backwards onto the cruise ship. One of the photographers took her picture from the back. The following day, plaintiff's picture was displayed along with other passengers' pictures and offered for sale. Plaintiff's picture, however, had been "doctored" with a picture of a gorilla face that had been appended to cover the back of plaintiff's head.

As plaintiff and her friend were proceeding to the cafeteria for breakfast, plaintiff slipped and fell down a flight of stairs. At the time of the fall, the stairs were carpeted. Plaintiff was disturbed from the fall and went to the cafeteria for a cup of coffee and a cigarette. Afterwards she completed an accident report and returned it to the manager of Floating Fleet. At that time, plaintiff refused medical assistance from the cruise ship's medical doctor.

---

**1.** In issuing group trips, Prince had an established ticketing procedure. Upon the arrival of a tour group, the escort would sign a work sheet as confirmation of the number of passengers. Prince would then issue the group ticket, the accompanying ticket jacket, the boarding passes, the meal vouchers, and the gambling chits.

Throughout the cruise, plaintiff had repeated confrontations with the photographers. On one occasion, a photographer dressed in a gorilla costume approached plaintiff. Again she turned her back. One photographer then shouted to the other, "take the back of her—she likes things from the back." Plaintiff understood the remark to be lewd and offensive. On another occasion, the photographers attempted to photograph plaintiff while she and her traveling companion sat in the coffee shop. Though she covered her face with her hands the picture was taken. Plaintiff was embarrassed by the pictures and felt harassed on her weekend voyage. The record discloses that plaintiff spent several hours in her cabin in order to avoid the photographers.

Sometime after departing from the M/S Scotia Prince, plaintiff began to experience severe bruising and physical discomfort, in particular, lower back pains. This pain continued in varying degrees. Her injury interrupted activities such as lifting, gardening, or walking for extended periods of time. She is, however, able to work and engage in normal social activity.

On March 7, 1986, over a year and a half after the cruise, plaintiff filed a complaint against M/S Scotia Prince, Transworld and Prince. Prior to the bench trial, plaintiff's *in rem* claims against M/S Scotia Prince were dismissed for failure to obtain *in rem* jurisdiction over the vessel. Plaintiff's *in personam* claims proceeded to trial against Prince and Transworld. Based on the photographers' conduct, plaintiff asserted a claim for intentional infliction of emotional distress and negligent infliction of emotional distress. She further alleged that Prince was negligent in maintaining the stairways and as a result she slipped and fell down the stairs and injured her back. Prince and Transworld raised the defense that plaintiff's action was time barred by the one year contractual limitation provision specified in the Contract of Passage.

After a thorough review of the master ticket, the district court found that Donovan signed for and received the group ticket T73643; that said ticket contained clearly marked language warning each passenger to examine the terms and conditions of passage specified on the ticket jacket. The court also found, however, that the terms and conditions were never communicated to plaintiff. In considering the legal effect of these factual findings, the lower court ruled that since Prince did not do all that it reasonably could have done to notify plaintiff of the contractual limitations, plaintiff was not legally bound by them.

In examining the merits of plaintiff's claim for emotional distress, the district court concluded that Prince was indeed responsible for the photographers' conduct since the two photographers were considered part of Prince's crew and Prince had a pecuniary interest in the photographic concession. The lower court determined that the photographers' conduct was outrageous and that therefore plaintiff was entitled to recover $5,000.00 for intentional infliction of emotional distress. The trial court awarded plaintiff $25,000 in punitive damages on the grounds that Prince as a carrier had breached its duty to its passengers, that the photographers' conduct was intentional and deliberate, that Prince failed to discipline the photographers, and that an award was needed to deter future improper conduct. Prince and not Transworld appeals these findings. The district court returned a judgment for Prince and Transworld on plaintiff's claim for personal injuries and for negligent infliction of emotional distress. These holdings are not on appeal.[2]

## II. CONTRACTUAL LIMITATION

In determining whether a contractual limitation period contained in a passen-

**2.** The District Court, applying Maine law, dismissed plaintiff's claim for negligent infliction of emotional distress, finding no evidence of either physical consequences or an independent underlying tort grounded on invasion of privacy. The trial court also found that appellant was not negligent in maintaining the vessel's stairway where appellee fell down. *Rubin v. Matthews Int'l. Corp.*, 503 A.2d 694, 698 (Me. 1986). *See also, Packard v. Central Maine Power Co.*, 477 A.2d 264, 268 (Me.1984); *Culbert v. Sampson's Supermarkets, Inc.*, 444 A.2d 433 (Me.1982). Plaintiff has not cross-appealed, and we do not pass on these rulings.

ger ticket is binding on a steamship passenger, this Circuit has applied the "reasonable communicativeness" test on a case by case basis. *See Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861 (1st Cir.1983); *DeNicola v. Cunard Line Ltd.*, 642 F.2d 5 (1st Cir.1981). *See also, Barbachym v. Costa Line, Inc.*, 713 F.2d 216 (6th Cir. 1983); *Silvestri v. Italia Societa Per Azioni di Navigazione*, 388 F.2d 11 (2nd Cir.1968); *Lipton v. National Hellenic American Lines*, 294 F.Supp. 308 (E.D.N.Y.1968). Consideration must be given as to "whether the company has 'done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights'." *Shankles*, 722 F.2d at 864 (citing *Silvestri*, 388 F.2d at 17). In applying the test, several factors are analyzed: examination of the ticket itself, the circumstances surrounding the passenger's purchase, the passenger's possession of and familiarity with the ticket, and the passenger's ability to become meaningfully informed of the terms of the contract of passage. *Id.* at 865–66.

In the instant case, the district court properly found that the terms and conditions contained in the master ticket jacket validly imposed a one year prescription period for commencing death or personal injury action. Prince does not contest the finding that plaintiff never received the ticket jacket. Prince contends, however, that plaintiff should be imputed with knowledge of the contractual limitation period through her agent, the Peter Pan Tours guide, because he had picked up her ticket and had handled the ticketing procedures. Prince relies on cases that have held that where a party picks up or accepts a ticket on behalf of another, the party accepting the ticket is found to be the other's agent and therefore chargeable with notice of the terms on the ticket. Prince principally relies on two cases: *DeCarlo v. Italian Line*, 416 F.Supp. 1136 (S.D.N.Y.1976) and *Ciliberto v. Carnival Cruise Lines, Inc.*, 1986 AMC 2317 (E.D.Pa.1986) [available on WEST-LAW, 1986 WL 2560].

Prince's reliance on *DeCarlo* and *Ciliberto* is misplaced. In *DeCarlo*, plaintiff's travel arrangements were made by plaintiff's friend who made the reservations, delivered plaintiff's check to defendant and picked up the tickets. On the cruise ship, plaintiff's friend died unexpectedly. Plaintiff's friend both prior and during the voyage had possession of their individual tickets. At no time did plaintiff see her ticket or know of the contractual limitation provision in the ticket. The court concluded that plaintiff's action was time barred.

Similarly, in *Ciliberto*, 1986 AMC 2317, the district court found that plaintiff was bound by the one-year limitation provision when her traveling companion made the arrangements and received her ticket on her behalf. The court rejected plaintiff's arguments that defendant and her traveling companion had deprived her of the opportunity to see her ticket because she had chosen to forego the opportunity to examine the contract of passage by allowing her agent to pick up and to keep possession of her ticket. *Id.* at 2320–21. *See also Berry v. Holland American Line*, 1975 A.M.C. 325 (N.Y.Civ.Ct.1975) (plaintiff was imputed with knowledge of the contractual limitation period when her husband, acting as the agent for his family, purchased one ticket for his immediate family); *Horvath v. Cunard Steamship Co.*, 103 F.Supp. 356 (E.D.N.Y.1952) (plaintiff who could not read English was bound by the contractual limitation period in her ticket); *Rogers v. Furness, Withy &. Co.*, 103 F.Supp. 314 (W.D.N.Y.1951) (plaintiff was bound by the contractual limitation period when her traveling companion purchased their individual tickets).

This case, however, much more resembles *Barbachym v. Costa Line, Inc.*, 713 F.2d 216 (6th Cir.1983). In *Barbachym*, two plaintiffs were traveling on a cruise ship as part of a tour group. The two passengers received a boarding pass which contained language stating that conditions of passage were pursuant to the ticket held by the group leader. The Sixth Circuit held that the carrier failed to give reasonable notice of the contractual limitation provision because the physical characteristics of the group ticket were inadequate.

The court also stated that even if a passenger could determine from the boarding pass that there were some important terms and conditions concerning the voyage, "the passenger naturally would assume that only the 'Group Leader' had access to the material containing those terms." *Id.* at 220.

■ *De Carlo* and *Ciliberto* stand for the proposition that when a passenger gives the authority to another—at least where such other is a relative, friend, personal companion, or the like—to acquire and to hold her individual passenger ticket and where the contract of passage on the individual ticket is conspicuously stated and valid, the court will rightly charge a passenger with notice of the contractual provisions. This is necessary to avoid passengers who delegate their responsibilities to another in handling their individual tickets to bypass valid limitation provisions. *Ciliberto,* 1986 AMC at 2321. On the other hand, in situations where, like here, a tour group makes arrangements for multiple reservations and the carrier issues one master ticket to the tour group leader, the carrier must give reasonable notice in the materials issued to each passenger that they should examine the terms of the contract of passage or, at minimum, clearly direct passengers to documents that set forth such terms and conditions. *Barbachym v. Costa Line, Inc.,* 713 F.2d 216.

■ Although the warning printed on the master ticket T73643 was sufficiently clear on its own terms, plaintiff could not have been aware of important terms in the Contract of Passage when the Peter Pan Tours guide was in the exclusive possession of the group's master ticket and jacket. Defendant chose for administrative convenience to issue to the tour leader one ticket for the entire tour group. Defendant also chose to issue other separate documents to each individual passenger, none of which provided notice to passengers of Peter Pan Tours group that they should examine the terms and conditions printed on the master ticket. Nor was the contract of passage incorporated or referred to in that part of the boarding pass which each passenger possessed. The carrier has the legal duty to provide each passenger with notice of important contractual limitations. Plaintiff cannot be possibly charged with legal notice when appellant failed to take reasonable steps to inform plaintiff of the one year contractual limitation provision.

## III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ Defendant also appeals the district court's findings that the nature of the photographers' actions was so extreme and outrageous as to cause plaintiff severe emotional upset.[3] Defendant admits that the photographers' conduct of taking plaintiff's picture against her expressed wishes should not be condoned or approved. Yet, defendant argues that such conduct does not rise to the level of "atrocious and utterly intolerable" behavior. Defendant also contends that the district court erred in interpreting the photographers' comment that plaintiff "likes things from the back" as lewd. We see no reason to depart from the district court's findings on this issue. The photographers acted deliberately and maliciously in repeatedly taking plaintiff's picture without her consent. Worst of all, they then doctored her picture with a gorilla's face and had it displayed at the concession stand. In addition, the photographers' misconduct prevented plaintiff from fully enjoying her weekend voyage. She had to remain in her cabin for hours in order to avoid the harassing behavior and offensive comments of the photographers. As pointed out by the district court in its

**3.** In analyzing the merits of plaintiff's claim for intentional infliction of emotional distress, the district court applied Maine law because there is no rule of law in maritime law on the infliction of emotional distress. The court also reasoned that Maine law was the appropriate choice of law and that Maine has a compelling state interest to hold all entities with significant contacts in the state to a uniform duty of care. *Kossick v. United Fruit Co.,* 365 U.S. 731, 738, 81 S.Ct. 886, 891, 6 L.Ed.2d 56 (1961). Since Prince and plaintiff do not object to the application of Maine law, we accept the District Court's application of Maine law for the purpose of this appeal.

comprehensive decision, she had good reason to be emotionally perturbed, humiliated and embarassed by such conduct. The photographers totally disregarded plaintiff's clearly expressed wishes. The district court is in a better position than this Court to assess the credibility of the parties and witnesses. *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed. 2d 518 (1984).

■ Prince's next contention is that even if the photographers' conduct constitutes intentional infliction of emotional distress, defendant cannot be held legally responsible for the photographers' conduct. We disagree. As correctly stated by the district court, a maritime carrier has an "unconditional responsibility for the misconduct of its people toward the passengers." *Muratore*, 656 F.Supp. at 479 (citing G. Gilmore & C. Black, Jr., *The Law of Admiralty*, Sect. 1–10 at 23 n. 77 (2d ed. 1975)). *See, e.g., Avera v. Florida Towing Corp.*, 322 F.2d 155 (5th Cir.1963); *Farmer v. O/S Fluffy D.*, 220 F.Supp. 917 (S.D.Tex.1963). Since a charterer is looked upon as an owner of a vessel *pro hac vice*, the doctrine of *respondeat superior* applies to hold a carrier responsible for the defaults of its crew. G. Gilmore, *supra* at 242. Although Prince did not have a contract with Intermed, Prince continued to be responsible for the vessel, the crew and the passengers. As pointed out by the trial court, the photographers were listed as crew members. This fact led the court to the reasonable inference that Prince considered the photographers as part of its crew. Moreover, Prince's agent Floating Fleet had a pecuniary interest in the photographic concession which Prince impliedly consented to the photographers' presence aboard the M/S Scotia Prince. Thus, as bareboat carrier, Prince had complete responsibility for its operations and the conduct of its crew, employees or agents aboard the vessel.

**4.** The *Kermarec* case involved a negligence action by a social invitee brought against a carrier. The Supreme Court refused to adopt the traditional common law distinction between a licensee and an invitee for purposes of the standard of care. Instead, the Court held that a carrier owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case. 358 U.S. at 632, 79 S.Ct. at 410.

## IV. COMPENSATORY DAMAGES

After determining that Prince was vicariously liable for the photographers' intentional infliction of emotional distress toward plaintiff, the district court awarded $5,000 in compensatory damages and $25,000 in punitive damages. Prince's concern is that the lower court may have applied a special or higher standard in considering the amount of Prince's liability. The lower court made repeated reference of the carrier's higher degree of care.

■ It is axiomatic in maritime law that a carrier owes a duty of exercising reasonable care towards its passengers under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959);[4] *Smith v. Southern Gulf Marine Co. No. 2, Inc.*, 791 F.2d 416 (5th Cir.1986); *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169 (2d Cir. 1983). *See Katz v. Cie. Generale Transatlantique*, 271 F.2d 590 (4th Cir.1959). Under this standard, the degree of care required must be in proportion to the apparent risk. Prosser, *Law of Torts*, Section 34, at 180 (4th ed. 1971). In other words, under certain situations, reasonable care may be a very high degree of care and in another situation it may be less. *Smith*, 791 F.2d at 421. At times, courts will use language that seems to indicate that a special standard is being applied in maritime tort cases. Commentators have stated that "(t)echnically the 'high degree' instruction is incorrect, as a matter of principle; but it is not likely ever really to mislead the jury, and almost never can be called prejudicial." *Id.* at 181. *See* 3 Harper & James, *The Law of Torts*, 500–01 (1986) ("this proportioning of care to danger does not mean that different degrees of care (or of negligence) are being applied ... because the legal standard remains constant—namely what a reasonable prudent person would do in all circumstances").

We do not believe Prince's argument is well founded. The district court's decision clearly sets forth the Supreme Court's opinion in *Kermarec*, 358 U.S. 625, 79 S.Ct. 406, as the appropriate legal standard—the duty of exercising reasonable care under the circumstances. The district court correctly found that Prince breached its duty of reasonable care to plaintiff. The district court was concerned with plaintiff's right to expect more courtesy and consideration from Prince than she had received. The district court's use of the language "special duty" might not have been the most felicitous phrase, but it certainly was not prejudicial to Prince when viewed in the broad context of the court analysis under *Kermarec*. Therefore, the lower court did not err in awarding $5,000 in compensatory damages.

## V. PUNITIVE DAMAGES

We, however, take a different tack as to the award for punitive damages. We commence with the proposition that punitive damages may be awarded in maritime tort actions where defendant's actions were intentional, deliberate or so wanton and reckless as to demonstrate a conscious disregard of the rights of others. *See The Amiable Nancy*, 16 U.S. (3 Wheat.) 546, 4 L.Ed. 456 (1818); *Protectus Alpha Navigation Co. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1385 (9th Cir.1985); *Complaint of Merry Shipping, Inc.*, 650 F.2d 622, 624–25 & n. 9 (5th Cir.1981); *rehearing denied sub-nom, Dyer v. Merry Shipping Co., Inc.*, 659 F.2d 1079 (5th Cir. 1981); *In Re Marine Sulphur Queen*, 460 F.2d 89, 105 (2d Cir.1972), *cert. denied*, 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972); *Robinson v. Pocahontas, Inc.*, 477 F.2d 1048, 1051–52 (1st Cir.1973); *Pino v. Protection Maritime Ins. Co., Ltd.*, 490 F.Supp. 277, 281 (D.Mass.1980).[5] The purpose served for awarding exemplary damages to a fully compensated plaintiff is to punish defendant and to deter others from engaging in like manner. *Lake Shore & M.S.R. Co. v. Prentince*, 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97 (1893); Prosser, *supra* at 7–9. An award of punitive damages is within the sound discretion of the trial court unless clearly erroneous. *Marine Sulphur Queen*, 460 F.2d at 105.

The issue faced in this case is whether or not the district court clearly erred in awarding punitive damages against defendant carrier for the intentional infliction of emotional distress committed by the photographers against plaintiff-passenger. Prince asserts that there is no evidence in the record to support the district court's conclusion that Prince knew of the conduct of the photographers, or ratified it. We agree.

When a principal has neither authorized nor ratified the conduct of her servant, the courts are split on whether to hold the principal liable for punitive damages. A majority of courts have awarded punitive damages against corporations or principals for the tortious acts of their agents regardless of approval or ratification. *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575 n. 14, 102 S.Ct. 1935, 1947 n. 14, 72 L.Ed.2d 330 (1982) (citing Prosser, *supra* at 12). The rationale for this view is that it is in accordance with agency law that holds principals liable when their agents commit a tortious act with apparent authority. *Id.* at 566, 102 S.Ct. at 1942.

A significant minority of courts following the Supreme Court decision in *Lake Shore & M.S.R. Co. v. Prentince*, 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97 (1893), have held that a master cannot be held liable for the acts of her agent when the master has neither authorized nor ratified such con-

---

5. Awards for punitive damages have been under much controversy. *See generally*, Prosser, *supra* at 11–13. In fact, pending before the Supreme Court is whether a $1.6 million punitive damages award violates the excessive fines clause of the Eighth Amendment. *Bankers Life & Casualty Co. v. Crenshaw*, No. 85–1765. *See* ABA Journal, *The Constitutionality of Punitive Damages*, December 1, 1987. In our case, Prince had moved to alter the judgment before the lower court on the ground that it violated the First Amendment. Prince, however, did not raise this issue of the constitutionality of punitive damages, and, therefore, that particular issue is not before this Court.

duct.[6] Prosser, *supra* at 12. This position is followed by the *Restatement (Second) of Torts* in Section 909.[7] Under the *Restatement (Second)* standard, punitive damages award is appropriate in circumstances where the principal authorizes or ratifies the agent's act or if the agent is employed in a managerial capacity and was acting within the scope of employment. Unlike *Lake Shore*, the *Restatement (Second)* standard would place liability on a master when a servant was in a "managerial capacity" performing within the scope of his or her employment regardless of the master's authorization or ratification. *Protectus Alpha Navigation Co.*, 767 F.2d at 1386; *Thyssen, Inc. v. S.S. Fortune Star*, 777 F.2d 57, 67 (2d Cir.1985).

This is a matter of first impression in this Circuit. We decide it as one of federal admiralty law. Although we understand the district court's reasons for choosing the majority view expressed in *Goddard v. Grand Trunk Ry.*, 57 Me. 202, 223–28 (1869), we believe that a more limited view should be taken. The *Lake Shore* rule is the "touchstone." The rationale for this rule is to ensure that punitive damages are awarded against the guilty offender. Hence, "(a) principal, ... though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages merely by reason of wanton, oppressive or malicious intent on the part of the agent." 147 U.S. at 107–08; 13 S.Ct. at 263.

We do not decide today whether, as other circuits apparently believe, *Lake Shore* should be expanded to encompass the *Restatement (Second)* outlook. Whether this Court applies *Lake Shore*'s strict "complicity rule" or the more relaxed standard in Section 909 of the *Restatement (Second)* to this case, the result is the same. Plaintiff cannot be awarded punitive damages. Under the strict complicity rule, the court must determine whether or not there was knowledge or ratification on the part of the principal. In the present case, the record is barren of any evidence to demonstrate Prince's knowledge or ratification of the photographers' misconduct. In fact, both Giuseppe Ravenna, the Hotel Manager, and Henk Pols, the President and General Manager, of Prince testified at trial that they had no prior knowledge of the photographers' activities. After the Hotel Manager learned of the photographers' behavior, he insisted that the photographers apologize to plaintiff. He also sent a memorandum to his superiors stating that he had severely reprimanded the photographers. There was no showing that the photographers had indulged in such antics on prior occasions, or that, because of some "track record," a reasonably conscientious charterer would have had reason to suspect that they would harass passengers on this voyage. Punitive damages cannot be imposed upon Prince since plaintiff did not show that Prince approved or ratified the outrageous conduct of the photographers. It would be unfair to punish the charterer when it was not aware actually or constructively of its staff's misconduct and had not encouraged such misconduct.

Under the *Restatement (Second)* standard, a principal may be held liable if the agent was employed in a managerial capacity and acting under the scope of employment or there was authorization, ratification or approval by the principal. For instance, in *Protectus Alpha*, 767 F.2d

---

**6.** The Supreme Court mentioned in a footnote that the Court may have deviated from the trend of the late 1900s in deciding *Lake Shore*, 147 U.S. 101, 13 S.Ct. 261. *American Society of Mechanical Engineers, Inc.*, 456 U.S. at 575 n. 14, 802 S.Ct. at 1747 n. 14.

**7.** Section 909 of the *Restatement (Second) of Torts* states:

Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,

(a) the principal or a managerial agent authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the principal or a managerial agent of the principal ratified or approved the act.

1379, the Ninth Circuit recently upheld a punitive damages award against a shipowner. In that case, a fire broke out aboard the defendant's vessel. When the flames were being brought under control by the local firefighters and Coast Guard, the dock foreman cast off the ship without consulting the firefighters and in disregard of the Fire Department's order. In applying the *Restatement (Second)* standard, the court determined that a dock foreman clearly held a managerial position and the dock foreman committed the tortious conduct while he was acting within the scope of his employment. 767 F.2d at 1386. The court, because of these facts, concluded that the shipowner would be liable for punitive damages regardless of corporate authorization or ratification.[8] In the case at hand, the photographers obviously did not occupy a managerial position and therefore Prince cannot be held liable for punitive damages.

In this particular case, Prince cannot be held liable because 1) it neither authorized nor ratified the photographers' misbehavior, 2) it had no reason to suspect—and was not aware of—such misconduct until after the fact, 3) it took appropriate action once it learned what had transpired, and 4) the photographers were not managerial agents.

The judgment awarding compensatory damages is affirmed. The award for punitive damages is vacated. Each party to bear its own costs. The case is remanded for the entry of a revised judgment consistent with this opinion.

**8.** *But see McGuffie v. Transworld Drilling Co.,* 625 F.Supp. 369 (W.D.La.1985) (explicitly rejecting reasoning of *Protectus Alpha* in favor of *Lake Shore* strict complicity theory).