**Susan MORTON; William Morton, Plaintiffs–Appellants,**

v.

**Joaquin Martins DE OLIVEIRA, and Carnival Cruise Lines, Inc., Defendants–Appellees.**

No. 91–55125.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1992.

Decided Jan. 19, 1993.

John N. Connell, Anderson & Connell, Bellingham, WA, for plaintiffs-appellants.

William L. Robinson, Lillick & Charles, Long Beach, CA, for defendants-appellees.

Before: BRUNETTI, O'SCANNLAIN, and T.G. NELSON, Circuit Judges.

BRUNETTI, Circuit Judge:

This admiralty case arises from an alleged rape on board a cruise liner. We must decide whether the Supreme Court has implicitly overruled this circuit's law that a ship owner is absolutely liable for a crew member's assault on a passenger.

## I

Plaintiffs Susan and William Morton paid to take a cruise in 1989 on the M/V Carnivale, a ship owned and operated by Carnival Cruise Lines, Inc. Crew member Joaquin De Oliveira served as their regular dining room waiter.

One evening, while William Morton was at the ship's casino, Susan Morton was alone in their cabin when, according to her account, De Oliveira appeared at her door with a bottle of wine and two glasses and said he thought the Mortons would like to sample some.

Susan asked him in and they exchanged pleasantries and each had a glass of wine. According to Susan, she began to feel dizzy. She asked De Oliveira to get her husband, but instead De Oliveira pushed her on the bed and raped her. She did not tell her husband immediately about the attack nor did she report it to authorities aboard the ship.

De Oliveira, who no longer works for Carnival and apparently cannot be located, made a statement to a Carnival security official in which he denied raping Susan Morton. He claimed in essence that he was delivering a container of milk when she invited him inside for some wine and then attempted to seduce him. He denied having intercourse with her. Several weeks after the cruise ended, according to her deposition, Susan Morton told her husband she had been assaulted by De Oliveira during the cruise.

The Mortons sued De Oliveira and Carnival Cruise Lines. After a period of discovery, the Mortons conceded that they would be unable to show any negligence by Carnival in hiring or supervising De Oliveira. Instead, their complaint rested on a theory of a ship owner's absolute liability for assaults on passengers by its crew members.

The district judge determined that "those cases relied upon by the plaintiffs in support of a strict liability standard have been superseded or over-ruled" by *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), *overruled on other grounds*, 398 U.S. 375 (1970). The district judge conclud-ed: "Therefore, a negligence standard of reasonable care under the circumstances is to be applied in determining the liability, if any, of Carnival Cruise Lines, Inc., in this case." Because the Mortons could present no evidence of any negligence by Carnival, the district judge granted summary judgment for Carnival. The Mortons now appeal.

## II

■ We review summary judgments and questions of law de novo. *See Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). The parties agree that general maritime law applies. The Mortons claim that the district court erred in concluding that Carnival was not absolutely liable for an assault by a crew member. The Mortons contend that they should be allowed to proceed to trial.

■ We begin by examining the Ninth Circuit case on point. In *Pacific S.S. Co. v. Sutton*, 7 F.2d 579 (9th Cir.1925), *cert. denied*, 269 U.S. 586, 46 S.Ct. 202, 70 L.Ed. 425 (1926), a teenage girl sued a ship owner alleging that two crew members assaulted her during a voyage. She received a judgment against the ship owner and the ship owner appealed.

The court first noted the carrier-passenger relationship and its consequences:

[B]y the sale of the ticket there arose a contractual relationship between the company and the passenger, to which relationship the law by its own force annexed certain implied obligations and duties to be observed and performed by the parties, respectively, toward each other. The contract of carriage made it the duty of the carrier to carry safely and to protect its passenger from violence and insult committed by its own servants.

7 F.2d at 580. The court then reviewed several authorities outlining the duties of a carrier before quoting the Washington Supreme Court:

Appellant by the act of employment vouched for his deportment during the voyage. A carrier owes a duty to every passenger to protect him from insult and assault. It is a part of the contract of carriage. * * * As long as respondent was a passenger on appellant's ship, appellant owed him a *duty of absolute protection* from the assaults and aggressions of its servants, and the rule is well nigh universal that the carrier cannot plead as a defense that the servant acted outside the scope of his employment.

*Id.* (quoting *Marks v. Alaska S.S. Co.*, 71 Wash. 167, 127 P. 1101 (1912)) (emphasis added; omission in original). This court then concluded: "It therefore follows that the court was right in treating the case as in contract, controlled by the general principles stated." *Id.* In the present case, there is no dispute that a carrier-passenger relationship existed between Carnival and Susan Morton. Under *Pacific*, then, Morton would be entitled to recover from Carnival simply by showing that the assault was committed by the crew member during the voyage.

Carnival, however, contends that the Supreme Court implicitly overruled *Pacific* in *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). In *Kermarec*, a visitor aboard a ship suffered injury as a result of the ship owner's negligence. The district judge instructed the jury that because the visitor was a licensee, the ship owner could be liable only if it actually knew of the hazardous condition and failed to warn the visitor of the hazard.

The Supreme Court stated the issue as "whether admiralty recognizes the same distinctions between an invitee and a licensee as does the common law." *Id.* at 630, 79 S.Ct. at 409. The Court found no such distinctions in maritime law: "We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Id.* at 632, 79 S.Ct. at 410.

In isolation, this statement might support Carnival's contention and the district court's conclusion. But read in the context of the entire opinion, it does not necessarily reject the principle that a ship owner is absolutely liable for its crew members' assaults upon passengers.

In deciding *Kermarec*, the Court first noted that it "must be decided in the performance of the Court's function in declaring the general maritime law, free from inappropriate common-law concepts." *Id.* at 630, 79 S.Ct. at 409. The Court then focused on why the common law concept of the invitee/licensee distinction is inappropriate in admiralty law: "The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism." *Id.*

The Court found that such distinctions "originated under a legal system in which status depended almost entirely upon the nature of the individual's estate with respect to real property, a legal system in that respect entirely alien to the law of the sea." *Id.* at 631–32, 79 S.Ct. at 410. The Court then concluded that eliminating these distinctions and applying a general standard of reasonable care made more sense for admiralty law.

Even with that conclusion, however, the court noted:

This is not to say that concepts of status are not relevant in the law of maritime torts, but only that the meaningful categories are quite different. Membership in the ship's company, for example, a status that confers an absolute right to a seaworthy ship, is peculiar to the law of the sea.

*Id.* at 632 n. 9, 79 S.Ct. at 411 n. 9.

In that note, the Court makes clear that "reasonable care under the circumstances" is not the universal standard of care to be provided aboard ship. A different standard may apply where it makes sense under maritime law.

Unlike the invitee/licensee distinction, the rule regarding absolute liability for crew members' assaults cannot be traced

to obsolete concepts regarding real property and concepts of feudalism. Rather, it is a widely adopted rule that common carriers owe such an absolute duty to their passengers. *See, e.g., St. Michelle v. Catania,* 252 Md. 647, 250 A.2d 874, 876–78 (1969) (carrier vicariously liable for assaults committed by employees even outside their employment during the contract for transportation); *Whittle v. Southern Bell Tel. & Tel. Co.,* 306 S.C. 163, 410 S.E.2d 575, 575 (App.1991) (same); *Nazareth v. Herndon Ambulance Serv., Inc.,* 467 So.2d 1076, 1078–81 (Fla.Dist.Ct.App.) (same), *review denied,* 478 So.2d 53 (Fla.1985). A leading torts treatise explains the general rule:

> Where the deliberate or willful wrong was not done to further the master's business the tendency has been to deny vicarious liability, but here too there have been many qualifications. The relationship between master and plaintiff may be such as to put on the master a duty of protective care that he may not delegate. Thus a carrier is liable to its passengers for assaults by employees prompted by purely personal motives.

5 Fowler V. Harper, Fleming James, Jr., & Oscar S. Gray, *The Law of Torts* § 26.9, at 53 (2d ed. 1986).

There is no doubt that the M/V Carnivale is a common carrier and that many of the concerns that led to the establishment of this rule are present on ships as well as trains, taxi cabs and other carriers.

Given this meaningful basis for the rule, we find that the Court's decision in *Kermarec* cannot be read to overrule it. The Court explicitly exempted unseaworthiness claims from its holding; we think it is clear that it implicitly exempted other "meaningful categories."

We are not persuaded by Carnival's argument that this circuit has adopted the *Kermarec* standard as all-encompassing through cases such as *Craig v. M/V Peacock,* 760 F.2d 953 (9th Cir.1985). In *Craig,* the issue was whether or not the plaintiff was a seamen and thus entitled to the special protection. This court found he was not a seaman, and thus "the only duty owed him by Shipowners was that of exercising due care under the circumstances." *Id.* at 955. The court in that case was not confronted with an assault by a crew member; rather it simply had to decide whether the plaintiff was a seaman. If he was not, there was no dispute as to the standard of care owed him because his misfortune was the result of at most negligence and not any intentional acts by crew members.

We also are not persuaded by the contrary result reached in *Jaffess v. Saavedra,* No. 85 Civ. 7365 (MJL), 1988 WL 42049, 1988 U.S.Dist. LEXIS 3481 (S.D.N.Y. April 18, 1988). In that case, the district court found that a ship owner was not liable for an assault by a ship employee because the plaintiff did not show any negligence by the ship owner. The court appeared to be bound by *Compagnie Generale Transatlantique v. Rivers,* 211 F. 294 (2d Cir.), *cert. denied,* 232 U.S. 727, 34 S.Ct. 603, 58 L.Ed. 817 (1914), a case that, according to the district court, suggested that a plaintiff must show some fault by a ship owner before recovering for an assault by a crew member. As discussed above, we are bound by contrary Ninth Circuit precedent.

█ In conclusion, we hold that *Pacific* remains the law of this circuit. It is clear that we do not have the authority to set it aside; only the court sitting en banc may overrule a prior decision of the court. *See Montana v. Johnson,* 738 F.2d 1074, 1077 (9th Cir.1984). Accordingly, the Mortons should be allowed to proceed to trial.

REVERSED and REMANDED.