**Linda GILSTRAP, Appellant,**

v.

**AMTRAK, also known as The National Passenger Railroad Corporation; Michael Stallworth, Appellees.**

No. 92–2698.

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1993.

Decided July 2, 1993.

Paul W. Jacobson, Williston, ND, argued (William E. McKechnie, Grand Forks, ND, on the brief), for appellant.

James S. Hill, Bismarck, ND, argued (Rebecca S. Thiem, on the brief), for appellees.

Before MAGILL, Circuit Judge, and LAY and HEANEY, Senior Circuit Judges.

HEANEY, Senior Circuit Judge.

Linda Gilstrap alleges that while traveling from California to North Dakota on a train operated by Amtrak, she was sexually assaulted by Michael Stallworth, an Amtrak employee. Gilstrap brought suit against Stallworth and Amtrak in the district court for the District of North Dakota, asserting various theories of liability. Stallworth failed to appear and a default judgment has been entered against him, but Amtrak did appear and moved for summary judgment. Applying the appropriate state's laws to each of the claims, the district court dismissed all but one of the claims against Amtrak.[1] Gilstrap's appeal presents us with a narrow question of Washington state law: is a common carrier liable for tortious acts committed by its employee against a passenger when the employee acts outside the scope of his or her employment? Gilstrap relies on a 1912 decision of the Washington Supreme Court, *Marks v. Alaska S.S. Co.*, 71 Wash. 167, 127 P. 1101 (1912), which was not presented to the district court. Amtrak argues that

*Marks* is no longer the law in Washington and that the district court's determination of Washington law is correct.

## I

■■■ This appeal presents a question of state law. "In a diversity case, decisions of the state's highest court are to be accepted as defining state law unless the state court 'has later given clear and persuasive indication that its pronouncement will be modified, limited, or restricted.'" *Taylor v. Arkansas Louisiana Gas Co.*, 793 F.2d 189, 191 (8th Cir.1986) (citation omitted). "Where neither the legislature nor the highest court in a state has addressed an issue, the federal court must determine what the highest state court would probably hold were it called upon to decide the issue." *Hazen v. Pasley*, 768 F.2d 226, 228 (8th Cir.1985). "In making this determination, a federal court may 'consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Kifer v. Liberty Mut. Ins. Co.*, 777 F.2d 1325, 1329–30 (8th Cir.1985) (quoting *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980)). Reliable data that a federal court may consider include "scholarly treatises, the Restatement of Law, and germane law review articles." *McKenna*, 622 F.2d at 662.

## II

Were we to find that the *Marks* decision controls, Amtrak does not dispute that the district court must be reversed and this action must be remanded. Amtrak argues instead that the Washington Supreme Court would no longer consider *Marks* controlling precedent because it is an eighty-year-old case that has been rarely cited (not at all by the Washington appellate courts) and because it is out of step with modern tort law.

---

1. The sole undismissed claim has since been litigated below and has not been presented to this court on appeal.

Our task is fairly simple: if we find clear evidence that the Washington Supreme Court would not uphold *Marks,* we shall not apply it to this case; but if instead we find no clear evidence that Washington's highest court would overrule *Marks,* we shall then consider it binding precedent.

We understand *Marks* to hold the following: because of the special relationship. between common carrier and passenger, a common carrier is subject to strict vicarious liability for tortious acts committed by an employee against a passenger. The *Marks* court first recognized the rule that employers are not usually liable for actions of their employees that occur outside of the scope of the employment. 127 P. at 1101. The court continued, however, to hold that

> [a]s long as respondent was a passenger on appellant's ship, appellant owed him a duty of absolute protection from the assaults and aggressions of its servants, and the rule is well-nigh universal that the carrier cannot plead as a defense that the servant acted outside of the scope of his employment.

*Id.*

Amtrak argues that *Marks* "is simply one of those proverbial derelicts floating on the sea of the law, and should be treated accordingly." *Armijo v. Wesselius,* 73 Wash.2d 716, 440 P.2d 471, 473 (1968) (en banc). Amtrak cites a number of more recent opinions from Washington's appellate courts as evidence that Washington has moved away from strict liability of employers for employees acting outside the scope of employment. *See Kyreacos v. Smith,* 89 Wash.2d 425, 572 P.2d 723, 725 (1977) (en banc); *Blenheim v. Dawson & Hall Ltd.,* 35 Wash.App. 435, 667 P.2d 125, 129 (1983); *Kuehn v. White,* 24 Wash. App. 274, 600 P.2d 679, 681–82 (1979). The problem with Amtrak's argument is its premise: that Washington held all employers liable for their employees' actions outside the scope of the employment at the time *Marks* was decided. There is no trend away from such liability generally because there is no

evidence that Washington recognized such liability in 1912. The *Marks* opinion amply indicates that the holding in that case turned on the special relationship between common carrier and passenger, and the Washington courts have recognized that special relationship in recent years. *See, e.g., Youngblood v. Schireman,* 53 Wash.App. 95, 765 P.2d 1312, 1314 (1988).

Two judicial pronouncements relied on by Amtrak are particularly noteworthy for their failure to undermine liability in this case. In *Blenheim,* the Court of Appeals of Washington dealt with a number of theories of liability. In addressing vicarious liability, the court held that the employees' tortious conduct at issue had occurred outside of the scope of employment. 667 P.2d at 129. The plaintiff alleged no special relationship in this context. In later addressing the employer's alleged negligence, the court held that the employer did not owe the plaintiff any duty. As an aside, the court noted that a duty might arise under certain circumstances: "[t]hus, a common carrier has been found to have a duty to provide security for patrons against foreseeable criminal acts." *Id.* at 130. Were the alleged liability for negligence, foreseeability would be an issue, but as Gilstrap alleges vicarious liability due to the special relationship, the dictum in *Blenheim* is of no assistance.

A second misleading citation is to *Hoops v. Burlington Northern, Inc.,* 83 Wash.2d 396, 518 P.2d 707, 712 (1974). Amtrak summarizes that case's holding as follows: "railroad not strictly liable for passenger injury." Amtrak Brief at 23. The case actually dealt with an automobile-train collision and held that the railroad was not strictly liable for injury to the automobile driver.

Although Amtrak has failed to cast any real doubt on the current validity of the *Marks* holding,[2] we shall not leave our analysis at that point. Gilstrap directs us to the Washington Pattern Jury Instructions and to the Restatement of Agency. Though neither are binding on the Washington courts, both

---

**2.** Should there be any doubt that the Washington appellate courts rely on cases from the time period in which *Marks* was decided, we need inquire no further than one of Amtrak's own

cases. In *Kuehn,* the Court of Appeals of Washington relied on cases from 1911, 1913, and 1918. 600 P.2d at 681.

provide further evidence of how a contemporary court might view the holding in *Marks.* Under the heading "Common Carrier—Duty to Protect Passengers from Assault or Intentional Harm by Employees," pattern jury instruction 100.04 provides the following: "The defendant is liable for any injury proximately caused to its passengers by any [assault upon] [intentional harm to] them by any employee of the defendant [then on duty]." *Washington Pattern Jury Instructions— Civil 3d* 100.04 (West 1989). The comment to this instruction indicates that an employer may not escape liability for an assault committed by an employee against a passenger by asserting that the employee acted outside the scope of employment. *Id.* (citing *Marks,* 127 P. 1101).

A comment to the Restatement of Agency provides that

> [a] master or other principal may be in such relation to another that he has a duty to protect, or to see that due care is used to protect, such other from harm although not caused by an enterprise which has been initiated by the master or by things owned or possessed by him. This duty may be created by contract, as where one agrees to protect another, or may be imposed by law as incident to a relation voluntarily entered into, *as the relation of carrier and passenger,* or by statute.... [T]he fact that the one to whom the performance of the duty is delegated acts for his own purposes and with no intent to benefit the principal or master is irrelevant.

*Restatement (Second) of Agency* § 214 cmt. e (1958) (emphasis added). The American Law Institute provided the following illustration: "P, a railroad, employs A, a qualified conductor, to take charge of a train. A assaults T, a passenger. P is subject to liability to T." *Id.* illus. 3.

Finally, we note that the Ninth Circuit has cited the *Marks* decision as persuasive authority on the issue of common carrier liability for assaults to passengers. That court initially cited *Marks* in a 1925 decision, *Pacific S.S. Co. v. Sutton,* 7 F.2d 579, 580 (9th Cir.1925), *cert. denied,* 269 U.S. 586, 46 S.Ct. 202, 70 L.Ed. 425 (1926), but more recently it also cited *Marks* in *Morton v. De Oliveira,*

984 F.2d 289, 291 (9th Cir.1993). *Morton* was brought in admiralty and alleged that Carnival Cruise Lines was strictly liable for the rape of Susan Morton, a passenger, by De Oliveira, a dining room waiter. The district court held that all cases cited by plaintiffs in support of strict liability had since been overruled. The Ninth Circuit disagreed, reversing the grant of summary judgment and remanding for trial. In so doing, the court cited cases from a number of jurisdictions as support for the assertion that "it is a widely adopted rule that common carriers owe such an absolute duty to their passengers." *Id.* at 292. That court also relied on a "leading torts treatise" to explain the rule that " 'a carrier is liable to its passengers for assaults by employees prompted by purely personal motives.' " *Id.* (quoting 5 Fowler V. Harper et al., *The Law of Torts* § 26.9, at 53 (2d ed. 1986)).

■ Given the failure of Amtrak to provide clear evidence that the Washington Supreme Court would overrule *Marks* if given the opportunity, and given the thrust of the other scholarly authorities discussed, we find that the *Marks* decision remains good law. Although we agree with Amtrak that the age of the decision and the absence of recent citation to it suggest that the Washington Supreme Court might well reconsider its former ruling were an appropriate opportunity to arise, the evidence presented fails to persuade us that *Marks* would be overruled. As the First Circuit noted when determining the current validity of an 1869 decision by the Vermont Supreme Court,

> [w]e have no difficulty with the proposition that, in an appropriate case, a federal court "must not consider itself bound by old state court decisions if it 'is convinced by other persuasive data that the highest court of the state would [now] decide otherwise.' " However, the "data" needed to convince a federal court to ignore old state decisions must be more "persuasive" than exists here.

*In re Ryan,* 851 F.2d 502 (1st Cir.1988) (citations omitted).

## III

Because we find that *Marks* represents the current state of the law in Washington, we reverse the district court's grant of summary judgment for Amtrak insofar as it relied on an erroneous view of Washington law and remand for further proceedings consistent with this opinion.