634 So.2d 649 (1994)
Carol NADEAU, Appellant,
v.
Oscar COSTLEY, Carnival Cruise Lines, Inc., a Panamanian corporation, and Captain Angelo Los, Appellees.
No. 92-2895.
District Court of Appeal of Florida, Fourth District.
January 12, 1994.
Rehearing and Certification Denied May 6, 1994.
*650 Michael D. Eriksen, Romano, Eriksen & Cronin, West Palm Beach, for appellant.
John W. Keller, III, and Ted L. Shinkle, Keller, Houck & Shinkle, P.A., Miami, for appellees Carnival Cruise Lines, Inc., and Captain Angelo Los.
PER CURIAM.
The instant appeal from a summary final judgment arises out of a lawsuit filed by appellant Carol Nadeau against appellee Carnival Cruise Lines (a Panamanian corporation), appellee Angelo Los (captain of the cruise ship "Carnivale"), and Oscar Costley (crew member of the "Carnivale").[1] We affirm as to Los and reverse and remand as to Carnival.
Appellant alleged that she and a friend, Ms. Johnson, boarded the "Carnivale" in Port Canaveral on April 5, 1990. They were assigned a small stateroom at a remote location on one of the lower decks. On the first night of the cruise, appellant and Johnson returned to their stateroom sometime after midnight, locked the door, and went to sleep. Later, Johnson awoke when she perceived a crew member, Costley, kneeling beside her bed and fondling her vagina. Johnson screamed, awakening appellant. Costley ran out of the room and appellant shut the door behind him. Costley neither touched nor attempted to touch appellant. When appellant and Johnson attempted to phone for help, they discovered that their stateroom telephone was inoperable.
Appellant further alleged that she and Johnson decided to remain in the stateroom for safety until they could join the other passengers leaving their cabins for breakfast. In the interim, Costley returned to the stateroom and over the next two or three hours terrorized the two women by repeatedly placing a key into the lock, turning the doorknob, and making verbal sexual advances. Appellant believed Costley was capable of making good on his threats to reenter the stateroom. At deposition, appellant testified that she was "very afraid" during the initial attack on Johnson and was worried that she and Johnson would not make it out of the stateroom alive. Costley eventually departed and the two women left the stateroom when they heard the other passengers leaving their cabins. Appellant and Johnson immediately reported the incident to the purser. Appellant alleged that prior to the incident, she had not had any personal contact with Costley, nor had she said or done anything to provoke his attack. Appellant was not physically injured by Costley, nor did she receive any medical treatment or psychological counseling as a result of the incident.
Appellee Carnival filed numerous motions to dismiss appellant's pleadings. By the time the trial court entered summary final judgment in favor of Carnival and Los, appellant had filed her fourth amended complaint. In that complaint, appellant alleged that Carnival and Los were guilty of various acts of independent negligence that contributed to the incident. Appellant further alleged that Carnival was vicariously liable for the actions of its crew member due to its "contractual common carrier relationship" with appellant and was guilty of common law misrepresentation and false advertising. The trial court previously had dismissed count two of appellant's first amended complaint, alleging that Carnival had "breached the contract with the Plaintiff wherein the Defendant CARNIVAL CRUISE LINES, INC... . expressly and/or impliedly agreed with the Plaintiff to exercise reasonable care for her safety."
In their motion for summary final judgment, Carnival and Los argued that under maritime law, appellant could not "recover compensatory damages where she was never touched, threatened or physically injured in any way." At the summary judgment hearing, appellees argued that appellant could not recover for purely emotional injuries in the absence of some physical injury or "impact." We agree that this argument precludes recovery against Carnival and Los under Count III of the fourth amended complaint (setting forth a cause of *651 action for negligence),[2] the only count involving Los, but this argument fails as to two other issues being appealed as to Carnival.

I
Appellant first contends that the trial court reversibly erred in dismissing her claim for breach of contract of carriage against Carnival. We agree and conclude that the trial court erroneously accepted appellees' position that the only theory of liability available to an injured passenger bringing suit against a cruise line for the actions of a crew member is negligence. As appellant asserts, early maritime cases clearly recognize a breach of contract action against the carrier. See The Steamship City of Panama v. Phelps, 101 U.S. 453, 463, 25 L.Ed. 1061, 1065 (1880); see also Silverman v. Bermuda & West Indies S.S. Co., 74 F.2d 683 (2d Cir.1935). These cases are fully in accord with subsequent Florida decisions recognizing that a passenger may recover damages against a common carrier for breach of contract of carriage. See Colhoun v. Greyhound Lines, Inc., 265 So.2d 18 (Fla. 1972); Carlisle v. Ulysses Line Ltd., S.A., 475 So.2d 248 (Fla. 3d DCA 1985); Butts v. County of Dade, 178 So.2d 592, 593 (Fla. 3d DCA 1965).
Florida law specifically recognizes a breach of contract action against a cruise line where, as here, the cause of action is predicated upon a wrongful intentional act by a member of the ship's crew. In Commodore Cruise Line, Ltd. v. Kormendi, 344 So.2d 896 (Fla. 3d DCA), cert. denied, 352 So.2d 172 (Fla. 1977), the plaintiff was allegedly assaulted and battered in her cabin by a member of the ship's crew during an attempted robbery. The case proceeded to trial upon the theory of breach of contract of common carriage. In affirming the jury's verdict on liability, the court acknowledged that under Florida law, "a contractual duty arises between a passenger and common carrier obligating the carrier to transport the passenger to his or her destination, exercising the highest degree of care and vigilance for the passenger's safety." Id. at 897-98. This duty extends to the carrier's employees "and any wilful misconduct by its employees are actionable as against the carrier-employer." Id. at 898. A common carrier is liable to a passenger for the wrongful acts of its employees occurring through the entire contractual period (the time of embarkation to disembarkation), notwithstanding the fact that said acts are not within the scope of the employees' employment. Id..
While plaintiffs are free to sue in state courts for damages arising from maritime torts, maritime law is the substantive law to be applied when the wrong complained of occurs in navigable waters. Rindfleisch v. Carnival Cruise Lines, Inc., 498 So.2d 488 (Fla. 3d DCA 1986), rev. denied, 508 So.2d 15 (Fla. 1987).[3] However, this court is free to apply Florida law where it neither conflicts with nor disturbs the uniformity of maritime law. See S.C. Loveland, Inc. v. East West Towing, Inc., 608 F.2d 160 (5th Cir.1979); Luby v. Carnival Cruise Lines, Inc., 633 F. Supp. 40, 41 n. 2 (S.D.Fla.), affirmed, 808 F.2d 60 (11th Cir.1986).
Without attempting to distinguish the cases cited above, appellees seemingly maintain that admiralty no longer recognizes a cause of action for breach of contract of carriage. In support of this proposition, appellees cite Hass v. Carnival Cruise Lines, Inc., 1986 A.M.C. 1846, 1986 WL 10154 (S.D.Fla. 1986), Hark v. Antilles Airboats, 355 F. Supp. 683 (D.V.I. 1973), and Jaffess v. *652 Home Lines, Inc., 1990 A.M.C. 1430, 1988 WL 42049 (S.D.N.Y. 1988).[4] We disagree with these cases to the extent that they would bar recovery for breach of contract of carriage under the instant facts.

II
Appellant also asserts that the trial court reversibly erred in granting summary final judgment on Count IV in which appellant alleged that Carnival was vicariously liable for Costley's intentional infliction of emotional distress. We find this argument to be meritorious.
As previously discussed, Florida law holds a common carrier responsible for the willful misconduct of its employees during the entire contractual period, notwithstanding the fact that the employee's actions fall outside the scope of employment. Kormendi. This same principle has been recognized by federal courts applying admiralty law. In Muratore v. M/S Scotia Prince, 656 F. Supp. 471 (D.Me. 1987), the plaintiff filed suit to recover damages for physical injuries and mental pain allegedly suffered while aboard a cruise ship. The mental pain and suffering arose from the intentional conduct of the ship's photographers in taking her picture after she expressed her desire that it not be taken and in attaching a "gorilla face" to cover the back of her head before the pictures were posted for sale. The plaintiff was forced to remain in her cabin for hours to avoid the harassing behavior and offensive comments of the photographers. While appellant sought compensation for both negligent and intentional infliction of emotional distress, the court found that her claim for the former was barred under Maine law because the plaintiff failed to show "either accompanying physical consequences or an independent underlying tort." Id. at 482.
The district court did, however, find that the plaintiff was entitled to recover on her claim for intentional infliction of emotional distress. In reaching this conclusion, the court noted that "[i]t is a fundamental principle of maritime law that a carrier has unconditional responsibility for the misconduct of its people toward the passengers." Id. at 479. On appeal, the First Circuit affirmed the trial court's finding that the charterer was responsible for the intentional conduct of a member of the ship's crew. Muratore v. M/S Scotia Prince, 845 F.2d 347, 353 (1st Cir.1988). The court reasoned that because a charterer is looked upon as an owner of a vessel pro hac vice, the doctrine of respondeat superior applies to hold a carrier responsible for the defaults of its crew. Id. See also Morton v. De Oliveira, 984 F.2d 289 (9th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 289, 126 L.Ed.2d 238 (1993); Pacific S.S. Co. v. Sutton, 7 F.2d 579 (9th Cir.1925), cert. denied, 269 U.S. 586, 46 S.Ct. 202, 70 L.Ed. 425 (1926).
Setting forth the same argument specifically rejected by the Ninth Circuit in Morton, Carnival argues that a plaintiff seeking to hold a cruise line responsible for the intentional acts of one of its employees must show that the carrier was independently negligent. Carnival cites Compagnie Generale Transatlantique v. Rivers, 211 F. 294, 299 (2d Cir.), cert. denied, 232 U.S. 727, 34 S.Ct. 603, 58 L.Ed. 817 (1914), where the court indicated, in dicta,[5] that there could be no recovery for an intentional assault by a crew member unless "the proofs showed some specific neglect in exercising that degree of care which reasonable prudence would require of a carrier obligated to be watchful and vigilant to protect its sleeping passengers."
This court is free to apply Florida law in the absence of controlling maritime precedent. At best, admiralty courts are split on the question of whether independent negligence on the part of the shipowner is required to hold the owner liable for an intentional *653 assault by a crew member. Therefore, applying Florida law to the instant facts would in no way alter the uniformity of admiralty decisions. Moreover, in Count III, which is reincorporated into Count IV, appellant did allege that Carnival had been independently negligent. Specifically, appellant alleged that Carnival had negligently hired or retained Costley, had failed to supervise and restrict the crew, had failed to provide her with "a secure state room and communications thereto," had failed to warn passengers of such risks, and had failed to investigate the incident properly.
In the suit brought by Johnson, appellant's travel companion, the trial court rejected Carnival's argument that it could not be held liable for Costley's assault absent independent negligence. In entering summary judgment in the instant case, the trial court apparently believed all of appellant's claims were barred because she suffered no impact or physical injury. Contrary to Carnival's position, however, there is no authority for the proposition that physical injury or trauma is required to hold a carrier vicariously liable for the intentional actions of its employees. While physical manifestation may be necessary, as a matter of public policy, to limit subjective emotional trauma claims in negligence cases, the imposition of vicarious liability in cases involving common carriers is clearly contractual in nature. Therefore, the issue of foreseeability does not come into play. Appellees maintain that Muratore and Morton are distinguishable from the instant case because each of those plaintiffs had some physical impact. While the plaintiff in Morton did suffer some sort of physical impact when she was raped, the plaintiff in Muratore suffered no impact in relation to her claim for intentional infliction of emotional distress. Her slip and fall down a flight of stairs was completely unrelated to her claims for mental pain and suffering. Just as the Muratore plaintiff was forced to remain in her cabin to avoid the harassment and abuse of the ship's photographers, appellant was forced to remain in her cabin for hours while being threatened and verbally assaulted by a member of the ship's crew.
In sum, Count IV of appellant's fourth amended complaint sets forth a valid cause of action. Whether appellant proceeds against Carnival in tort (strict vicarious liability) or contract (breach of contract of carriage based on an intentional assault) is of no import. The fact remains that under both maritime and Florida law, Carnival, as a common carrier, can be held vicariously liable for the tortious actions of a crew member, even when the victim suffers no impact or physical manifestation of injury. Although not addressed by the parties in their briefs, we further hold that appellant's claims for misrepresentation and false advertising are revived by this reversal.
DELL, C.J., and GLICKSTEIN and POLEN, JJ., concur.
NOTES
[1] Costley is not a party to the instant appeal.
[2] See generally Brown v. Cadillac Motor Car Div., 468 So.2d 903 (Fla. 1985) (there is no cause of action for psychological trauma alone when resulting from simple negligence).
[3] We reject appellees' contention that Rindfleisch abrogates a breach of contract action predicated upon an intentional act by a member of the ship's crew. Rindfleisch merely holds that the United States Supreme Court's decision in Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), disapproving the application of the licensee-invitee distinction in maritime cases and ruling that a shipowner owes to all that are on board for legitimate purposes a duty to exercise reasonable care under the circumstances, is controlling over a Florida statute placing a higher degree of care upon a boat owner/operator in order to prevent injury to others. As previously mentioned, any cause of action predicated upon the negligence of either Los or Carnival is barred because appellant suffered no physical manifestation of injury.
[4] Hass and Jaffess can only be found in "American Maritime Cases" as they are not contained in the federal reporters.
[5] The defendant steamship owner argued on appeal that the trial court erred in charging the jury that it was bound to an obligation "of the very highest degree of care to protect its passengers." Because the trial court also instructed the jury, more than once, that the defendant was not an absolute insurer against assaults by a crew member, the Second Circuit held that the charge was actually favorable to the defendant and therefore did not have any undue influence on the jury's verdict.