**David R. JOHNSON, Appellant,**

v.

**HANNIBAL MOWER CORPORATION, Respondent.**

**No. WD 34681.**

Missouri Court of Appeals, Western District.

Aug. 28, 1984.

Stephen W. Nichols, Timothy H. Bosler, Law Offices of Timothy H. Bosler, Liberty, for appellant.

Steven G. Emerson, Marvin Ray Motley, Morrison, Larson, King, Stamper & Bold, Kansas City, for respondent.

Before SHANGLER, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The primary issue here is whether state of the art evidence of the defendant is admissible in a strict liability tort case involving a product defect. The plaintiff Johnson appeals from a jury verdict for the

defendant on a petition for damages for the loss of two toes. The accident occurred in 1976 when he slipped while using defendant Hannibal's lawn mower. The case was submitted on strict liability for defective design of the mower (allowing his foot to go under the housing and into the moving blade) as enunciated in *Keener v. Dayton Electric Mfg., Co.*, 445 S.W.2d 362, 364 (Mo.1969) and as applied to design cases in *Blevins v. Cushman Motors*, 551 S.W.2d 602, 607 (Mo. banc 1977).

Over the plaintiff's preserved objection, Hannibal which manufactured the mower between October 1970 and February 1971, introduced into evidence the year 1968 safety design standards for mowers of the American National Standards Institute (ANSI). A copy of these standards was introduced in evidence and explained from the stand by Hannibal's expert. ANSI is an organization composed, among others, of those in the manufacture of lawnmowers. It is a voluntary organization and sets safety design standards. The expert testified the mower in question met or exceeded the standards of ANSI, and ANSI standards in effect at the time did not require trailing shields or "dead-man controls" as the plaintiff contended were lacking, rendering the product in a defective condition and reasonably dangerous to the consumer under the Restatement (Second) of Torts, § 402A adopted in *Keener* which reads:

"(1) One who sells any product in a defective condition reasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold,

(2) The rule stated in Subsection (1) applies though

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

■ This issue is resolved by language in *Elmore v. Owens-Illinois, Inc.*, 673 S.W.2d 434 at 438 (Mo. banc 1984) which says:

"the law in Missouri holds that state of the art evidence has no bearing on the outcome of a strict liability claim; the sole subject of inquiry is the defective condition of the product and not the manufacturer's knowledge, negligence or fault. *Cryts v. Ford Motor Co.*, 571 S.W.2d 683 (Mo.App.1978). The manufacturer's standard of care is irrelevant because it relates to the reasonableness of the manufacturer's design choice; fault is an irrelevant consideration on the issue of liability in the strict liability context. Thus, plaintiffs established that Kaylo was 'defective' when they proved that it was unreasonably dangerous as designed; they were not required to show additionally that the manufacturer or designer was 'at fault,' as that concept is employed in the negligence context."

State of the art evidence is irrelevant in strict liability cases reasons the Supreme Court because, as stated in *Cryts, supra*, at 688, the plaintiff need not prove the violation of the standard of reasonable care for product design, but only that it was so defective as to make the product unreasonably dangerous for the anticipated use. *Cryts* rejected as having no bearing in a strict liability claim the manufacturer's contention that it had built the safest product possible under the existing technology.

"Moreover, compliance with the minimum federal standards does not mitigate a manufacturer's responsibility under the theory of strict liability any more than does compliance with the state of the art unless such standards require the defective condition to exist."

571 S.W.2d at 689.

■ The rule in the Restatement was adopted to insure the costs of injuries from

defective products are on the manufacturers and sellers as opposed to injured persons who cannot protect themselves. *Keener, supra,* at 364. In a negligence action you are determining the reasonableness of the maker's action in designing the product; in an action for strict liability the consideration is on the dangerous condition of the product as put into commerce. *Blevins, supra,* at 608. In Missouri, "it is unnecessary for the plaintiff to show that the defendant-manufacturer was negligent or reckless or intended to commit a wrong." *Noble Ferren and Margaret Ferren v. Richards Manufacturing Co.,* 733 F.2d 526 at 529 (8th Cir., 1984). *See also: Aronson's Men's Stores, Inc. v. Potter Electric Signal Co., Inc.,* 632 S.W.2d 472, 474 (Mo. banc 1982); *Porter v. Dawson & Company,* 703 F.2d 290 (8th Cir.1983).

To allow Hannibal's argument that this evidence was introduced only to rebut the plaintiff's evidence of the mower being defective or unreasonably dangerous, and not as a state of the art defense would be to contravene the strict products liability theory and the case law of Missouri which makes this evidence irrelevant.

Exhibit 45 and the testimony surrounding it was irrelevant. The introduction in evidence and consideration by the jury of this evidence of voluntary compliance with standards adopted within the power mower industry as set by ANSI must be deemed prejudicial and as having a material effect in the merits of the case. Rule 84.13(b). The fact these standards were widely accepted in the industry could easily have been interpreted by the jury to mean the product was safe and resulted in the defendant's verdict.

Johnson's other two points will not be discussed other than to say the trial judge did not abuse his discretion in the limitation of cross-examination by the plaintiff, and it would be the hope of this court that upon retrial no juror could fall asleep during the proceedings.

The judgment is reversed, the cause is remanded for a new trial.

All concur.