James **MILLER**; Margaret
**Miller**, Appellants,

v.

**YAZOO MANUFACTURING
COMPANY**, Appellee.

No. 93–2537.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1994.

Decided June 15, 1994.

---

82

Kenneth Lee Dement, Jr., Sikeston, MO, argued, for appellants.

Jeffrey P. Hine, Cape Girardeau, MO, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HANSEN, Circuit Judge, and KOPF,* District Judge.

HANSEN, Circuit Judge.

James Miller was mowing the grass in his backyard when he and his Yazoo Red Rider riding lawnmower tumbled down the side of a 10-foot-high ravine. Miller's right arm was injured, and two fingers on his right hand were severed. He and his wife sued the Yazoo Manufacturing Company on a strict liability theory. At trial, Yazoo introduced evidence that referred to and consisted of safety standards published by the American National Standards Institute (ANSI). The jury returned a verdict for Yazoo. The Millers moved for a new trial, arguing that the district court erroneously admitted evidence of ANSI standards addressing the length of time in which a lawnmower blade should stop rotating after a user releases a foot pedal that disengages power to the blade. The district court[1] denied the Millers' motion for new trial. The Millers appeal, and we affirm.

With exceptions not relevant here, "[a]ll relevant evidence is admissible." Fed. R.Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Although the substantive law of Missouri governs the Millers' strict liability claim, the determination whether Yazoo's evidence is admissible is a matter of federal law. *See Adams v. Fuqua Indus., Inc.*, 820 F.2d 271, 273 (8th Cir.1987).

In Missouri, the manufacturer of a product may be held strictly liable if a person is damaged because a product was sold "in a defective condition unreasonably dangerous when put to a reasonably anticipated use." Mo.Ann.Stat. § 537.760(3)(a) (Vernon 1988) (effective July 1, 1987); *see also Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 364 (Mo.1969) (adopting *Restatement (Second) of Torts* § 402A). A manufacturer also may be strictly liable if a person was damaged because the manufacturer failed to adequately warn the person of the product's unknown dangerous characteristics. Mo.Ann.Stat. § 537.760(3)(b); *see also Blevins v. Cushman Motors*, 551 S.W.2d 602, 606–07 (Mo.1977) (en banc) (applying common-law strict liability principles to failure-to-warn claim).

On appeal, the Millers point to three items of evidence that, they argue, should have been excluded as irrelevant and prejudi-

* The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Western and Eastern Districts of Missouri.

cial. First, a Yazoo Senior Vice President, James C. Welch, testified that a sticker on the Red Rider lawnmower "means that that particular model [of] mower has been certified to an ANSI standard." (II Tr. at 37.) Second, Yazoo's expert witness, Cliff Boylston, testified that he tested a Red Rider and found that the blade stopped, on average, 4.2 seconds after he released the clutch. (*Id.* at 62–64, 74.) Boylston further testified that this amount of time was "well within the requirements of the standard," (*id.* at 75); that "there's only one standard really that applies to this product and it is the ANSI ... standard," (*id.* at 76); that the ANSI standard applicable to power lawnmowers is intended to "represent[ ] general agreement among maker, seller and user groups as to the best current practice with regards to some specific problem" and to "reflect the national consensus of manufacturers, consumers and scientific technical and professional organizations and governmental agencies," (*id.* at 78); and that the "standards are used widely by industry and commerce and often by municipal, state and federal government," (*id.*). Third, Yazoo introduced as an exhibit a copy of ANSI Standard B71.1.1984, which specified that a lawnmower's "blades shall stop rotating ... within 7 seconds after the operator declutches." (Appellant's App. at 88.) The Millers argue that this evidence was irrelevant to the question whether the Red Rider was "unreasonably dangerous." [2]

■ Yazoo's evidence—testimony and documents asserting that a seven-second stopping period "reflect[s] the national consensus" and is the "general agreement among maker, seller and user groups," (II Tr. at 76–77)—helped the jury understand the condition of the Red Rider lawnmower and thus helped the jury determine whether the lawnmower was unreasonably dangerous. Yazoo's evidence is therefore relevant because it tends to make the existence of an unreasonably dangerous condition more or less probable than it would be without such evidence. *See* Fed.R.Evid. 402. Thus, the dis-

2. The Millers rely primarily on *Johnson v. Hannibal Mower Corp.*, 679 S.W.2d 884 (Mo.Ct.App. 1984), which held that evidence of ANSI standards is inadmissible in Missouri courts because "state-of-the-art evidence" is irrelevant to a strict liability claim alleging a defective condition. *Id.* at 885–86. The Millers' reliance on *Johnson* is misplaced for three reasons.

First, *Johnson's* reasoning was implicitly criticized by a later decision of the same court. *Johnson* relied on *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434 (Mo.1984) (en banc), which held that in a strict liability action alleging a defective product, "the sole subject of inquiry is the defective condition of the product and not the manufacturer's knowledge, negligence or fault," *id.* at 438. The Missouri Court of Appeals later pointed out that *Johnson's* reasoning is infected by a misuse of terminology; the court attempted to clarify the issue by pointing out that *Elmore* dealt with true "state-of-the-art" evidence (i.e., evidence about the limits of scientific "knowability") but that *Johnson* actually dealt with evidence of "industry practice and custom." *See Lane v. Amsted Indus., Inc.*, 779 S.W.2d 754, 758 n. 4 (Mo.Ct.App.1989). The Missouri legislature also clarified the issue when it codified a state-of-the-art defense to failure-to-warn actions. It said " 'state of the art' means that the dangerous nature of the product was not known and could not reasonably be discovered at the time the product was placed into the stream of commerce." Mo.Ann.Stat. § 537.764(1) (Vernon 1988). It also said, "This section shall not be construed to permit or prohibit evidence of feasi-

bility in products liability claims." *Id.* § 537.-764(4). Thus, it appears that *Johnson's* reasoning contains a non sequitur and that its conclusion is not supported by *Elmore*.

Second, *Johnson* is not a decision of Missouri's highest court. When we apply the substantive law of Missouri, we are bound by the decisions of the Missouri Supreme Court. *B.B. v. Continental Ins. Co.*, 8 F.3d 1288, 1291 (8th Cir.1993). "If the Missouri Supreme Court has not addressed the issue before this court, we 'must determine what the highest state court would probably hold were it called upon to decide the issue.' " *Id.* (quoting *Gilstrap v. Amtrak*, 998 F.2d 559, 560 (8th Cir.1993)). "Decisions of Missouri's intermediate appellate courts are not binding on this court, but they are persuasive authority, and this court must follow them when they are the best evidence of Missouri law." *Id.* The Missouri Supreme Court addressed the admissibility of true state-of-the-art evidence in *Elmore*, but we have been unable to find a case where the Missouri Supreme Court has considered the admissibility of evidence of industry practice and custom (such as ANSI standards) in a strict liability action alleging a defective condition.

Third and most important, *Johnson* interprets state evidentiary law. Missouri law assists us in this case only to the extent that it determines the "fact[s] that [are] of consequence to the determination of the action." Fed.R.Evid. 401. The ultimate question whether Yazoo's evidence is admissible is a question of federal law. *See Adams*, 820 F.2d at 273.

trict court did not abuse its discretion when it admitted the objected-to evidence.

 Even if we were to deem the ANSI standards inadmissible, their admission in evidence in this case would not be a ground for reversal. "No error in either the admission or the exclusion of evidence ... is a ground for granting a new trial ... unless [it is] inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Fed.R.Civ.P. 61. The Millers' only argument to the jury was that the blade did not stop at all because their Red Rider had a manufacturing defect or because Yazoo failed to warn the Millers in the Red Rider instruction manual that the blade disengaging mechanism needed regular lubrication. (II Tr. at 137–44.) The Millers essentially abandoned their alternative factual theory that a design defect caused the Red Rider's blade to run on too long. Furthermore, the jury answered a special interrogatory by stating that James Miller (who the evidence showed was operating his mower along the top edge of the ravine when he began to feel it "tilt") was 100% at fault. (Appellant's App. at 22.) Such a finding, which in Missouri establishes a complete defense to a strict liability action, *see Drabik v. Stanley–Bostitch, Inc.,* 997 F.2d 496, 506–08 (8th Cir.1993), means that Yazoo would not have been liable for Miller's injuries regardless of the Red Rider's blade's stopping time, *see id.* at 507 (holding that plaintiff may be at fault if he had knowledge of general characteristic that made the product dangerous even if he did not have knowledge of the precise defect alleged). Thus, the Millers were not prejudiced by the ANSI evidence. *See Brown v. LaCreek Elec. Ass'n,* 939 F.2d 623, 625 (8th Cir.1991) (holding in the alternative that exclusion of evidence was harmless because "[s]ubstantial evidence other than [the evidence at issue] supports the jury's finding").

* Henry Cisneros became Secretary of the Department of Housing and Urban Development on

We therefore affirm the judgment of the district court.